IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RON McCRARY, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | No. 3:05-CV-0504-BF (L) |
| | § | |
| THE PROGRESSIVE CORPORATION | § | |
| and PROGRESSIVE CASUALTY | § | |
| INSURANCE COMPANY, | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a consent case before United States Magistrate Judge Paul D. Stickney. The Court has considered Plaintiff Ron McCrary's ("Plaintiff") Motion for Partial Summary Judgment ("MPSJ"), Defendant Progressive Corporation and Progressive Casualty Insurance Company's ("Defendant") Cross Motion for Summary Judgment, the briefs, responses, appendixes, and reply.

Plaintiff claims he is entitled to separation benefits under the Employee Retirement Income Security Act ("ERISA")[1] based upon a document ("document") Plaintiff wrote after a discussion with Danny Earnest ("Earnest"), Defendant's Regional Claims Manager. Plaintiff was considering returning to work for Defendant after a lapse in his employment. The document contains Plaintiff's new job description and duties, as well as some additional items and concerns in numbered paragraphs under the "related questions" section of the document. (Exh. 3 to Pl.'s MPSJ.) In paragraph 8 of the "related questions," Plaintiff claims that Ken Nelson told him he would be able to assume his previous Progressive benefits and tenure, with the exception of one year of tenure. He claims the term "most recent date of hire" under "the Progressive Corporation Separation

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

Allowance Plan" ("Plan") should be construed to mean "tenure date," "seniority date," or "adjusted service date." He contends that the Plan entitles him to a separation allowance based upon eight years of service. Defendant requests that the Court deny Plaintiff's motion for partial summary judgment, dismiss his claim with prejudice, and award it attorney fees based upon Plaintiff's unreasonable and frivolous claim.

## Undisputed Material Facts

1. Defendant maintains the Plan pursuant to a 2000 Amendment and Restatement and the First Amendment thereto,[2] and the Plan is governed by ERISA. The Progressive Corporation ("the Company") administers the Plan and is the "named fiduciary" within the meaning of § 402 of ERISA. The Company has discretion "to interpret and construe [the] Plan and to decide all disputes and other matters arising [under the Plan], including . . . the right to determine eligibility for benefits and resolve possible ambiguities, inconsistencies or omissions."

2. The Plan and its First Amendment (effective January 1, 2002) contain the following relevant provisions:

> 1.9 "<u>Eligible Employee</u>" means a regular, non-temporary, non-union employee of a Participating Employer. . . .
>
> * * *
>
> 1.18 "<u>Termination Date</u>" means the effective date of an Eligible Employee's termination of employment with Progressive . . . .
>
> 1.19 "<u>Years of Service</u>" as to each Eligible Employee means *the period of time beginning on his/her most recent date of hire by a Participating Employer and ending on his/her most recent Termination Date* [emphasis supplied].
>
> * * *
>
> 2.1 A NON-DISABLED Eligible Employee shall be entitled to

---

[2] A Second Amendment became effective September 1, 2004, but it is not relevant to any of the issues in this proceeding.

        receive a separation allowance under this Plan if (i) Progressive terminates his/her employment as a result of a Reduction in Force or a Reorganization and (ii) the Eligible Employee signs a Separation Agreement and General Release and delivers it to the Company within 90 days after the Eligible Employee's Termination Date.

* * *

        In no event shall an Eligible Employee be entitled to receive a separation allowance if his/her employment terminates as a result of his/her death, resignation, leave of absence, Discharge for Cause or any reason other than as a result of a Reduction in Force or a Reorganization, or if he/she fails to deliver a signed Separation Agreement and General Release to the company within the time specified above.

2.2    Notwithstanding the preceding provisions, an Eligible Employee shall not be entitled to receive a separation allowance if Progressive offers him/her a comparable Job, or he/she accepts any job (whether or not it is a Comparable Job) with an Affiliated Company prior to payment of a separation allowance.

* * *

3.5    Notwithstanding anything herein to the contrary, no separation allowance payments shall be made under this Plan to any Eligible Employee more than twenty-four (24) months after his/her Termination Date.

* * *

6.2    Individual employment, separation, severance and other agreements that include provisions regarding separation allowances, severance pay and/or similar compensation following termination of employment and that are entered into in writing with an Eligible Employee shall supersede and replace this Plan, except as otherwise expressly provided by such agreements; however, no such agreement entered into on or after February 1, 2000 shall be effective or enforceable unless approved in writing by PCIC"s Chief Human Resources Officer, or the holder of any similar successor office, and nothing in this Plan shall be construed as ratifying

3

or validating any such agreements that have not been so approved.

* * *

7.1   The Company shall establish reasonable procedures under which a claimant, or his/her duly authorized representative, may present a claim for benefits under this Plan.

7.2   Unless such claim is allowed in full by the Company, written notice of the denial shall be furnished to the claimant within ninety (90) days (which may be extended by a period not to exceed an additional ninety (90) days if special circumstances so require and written notice to the claimant is given prior to the expiration of the initial ninety (90) day period describing such circumstances and indicating the date by which the Company expects to render its determination) setting forth the following in a manner calculated to be understood by the claimant:

   (i)    The specific reason(s) for the denial;

   (ii)   Specific reference(s) to any pertinent provision(s) of the Plan or rules promulgated pursuant thereto on which the denial is based;

   (iii)  A description of any additional information or material as may be necessary to perfect the claim, together with an explanation of why it is necessary;

   (iv)   A description of the Plan's claims review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse benefit determination on review; and

   (v)    An explanation of the steps to be taken if the claimant wishes to resubmit his/her claim for review.

7.3   Within a reasonable period of time after the denial of the claim, but in any event not to be more than sixty (60) days, the claimant or his/her duly authorized representative may make written application to the Company for a review of

such denial. The claimant or his/her representative, may, upon request and free of charge, review or receive copies of documents, records and other information relevant to the claimant's claim for benefits, and may submit written comments, documents, records and other information relating to the claim for benefits.

7.4 If an appeal is timely filed, the company shall conduct a full and fair review of the claim and mail or deliver to the claimant its written decision within sixty (60) days after the claimant's request for review (which may be extended by a period not to exceed an additional sixty (60) days if special circumstances or a hearing so require and written notice to the claimant is given prior to the expiration of the initial sixty (60) day period describing such special circumstances and indicating the date by which the Company expects to render its determination). In conducting its review, the Company shall take into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination. The Company's decision on review shall:

(i) Be written in a manner calculated to be understood by the claimant;

(ii) State the specific reason(s) for decision;

(iii) Make specific reference to pertinent provision(s) of the Plan;

(iv) State that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claimant's claim for benefits; and

(v) Include a statement of the claimant's right to bring a civil action under Section 502(a) of ERISA.

(Def. App. 3-5, 8-10.)

3. According to the Plan, the amount of the separation allowance depends upon the "Eligible Employee's" "Years of Service," as defined in ¶ 1.19 of the Plan.

5

4. An "Eligible Employee" whose most recent date of hire is less than one year from his termination date (i.e. less than one "Year of Service") is entitled to a separation allowance equal to four weeks of compensation.

5. Defendant also maintains a policy, described in its Handbook ("Handbook Policy"), which governs certain specifically-enumerated benefits such as vacation and anniversary awards for employees who leave employment and later return to work. Under the Handbook Policy, Defendant bridges the employee's previous employment with his return by determining the employee's "adjusted service date" for purposes of the specifically-enumerated benefits.

6. Plaintiff began employment with Defendant on September 19, 1994, as a claims adjuster, and voluntarily left employment on June 28, 2001. He admits that, under the terms of the Plan, his resignation made him ineligible for a separation allowance.

7. Plaintiff met with Earnest in July of 2002, to discuss the possibility of returning to employment with Defendant in a newly created position under Earnest's supervision.

8. Plaintiff admits that the issue or topic of separation allowance was not discussed, and that Earnest did not make any representations or promises at any time with respect to a separation allowance or how entitlement to a separation allowance would be determined.

9. After Plaintiff's meeting with Earnest, Plaintiff drafted the document, delineating what he understood the job description and duties would be in the new position. At a second meeting with Earnest, Plaintiff presented the document to Earnest for his signature, and Earnest signed only the job description and duties portion of the document.

10. The document also contained a "related questions" section. Paragraph 8 under the "related questions" section states as follows:

> Will I be able to assume previous Progressive benefits and tenure?
> Answer (Ken Nelson): Yes but will lose one year of tenure. Will be able to resume other benefits when left. Vacation and sick time start at 0 and will accrue with service. Will still be vested.

11. Plaintiff drafted Paragraph 8 based on a telephone conversation he had with Ken Nelson ("Nelson"), Progressive's local Human Resources Manager. The "one year of tenure" that Nelson referred to and explained to Plaintiff was Defendant's Handbook Policy under which employees who leave employment and subsequently return are given an "adjusted service" date which affects vacation eligibility and service anniversary awards. Earnest did not indicate his agreement with Paragraph 8 of the document, and no one else signed it. Plaintiff later obtained from Defendant

a letter which states that Plaintiff's "seniority date" is December 15, 1995.

12. Plaintiff admits that he and Nelson did not discuss a separation allowance or how a separation allowance would be determined.

13. Defendant's Chief Human Resources Officer did not approve in writing any agreement between Plaintiff and Defendant that supersedes the Plan with respect to a separation allowance. Accordingly, no effective or enforceable agreement supercedes the Plan, and nothing in the Plan shall be construed as ratifying or validating any such agreement that has not been so approved.

14. Plaintiff went to work for Defendant, but less than a year later, Defendant decided to reorganize its business. The reorganization eliminated Plaintiff's position. Defendant offered Plaintiff his choice of a separation allowance in accordance with the Plan or a position in the same facility without any change in pay or benefits. In the new position Todd Marsha, rather than Earnest, would supervise Plaintiff.

15. Defendant provided Plaintiff with a Separation Agreement, which calculated his "Years of Service" as the period of time beginning on his most recent date of hire and ending on his most recent Termination Date. Under the Separation Agreement, Plaintiff was offered, among other things, a lump sum separation allowance of $4,471, less applicable taxes.[3]

16. Defendant also provided Plaintiff with the General Release required by the Plan.

17. Plaintiff did not accept the separation allowance or sign the General Release.

18. Plaintiff did not file a written claim for a separation allowance with the local Human Resources office, as required by the Plan.

19. Although Plaintiff did not want the new position, he accepted it and worked in the new position from July 20, 2003, until he resigned.

20. Plaintiff voluntarily resigned on August 21, 2003.

21. Plaintiff admits that he understood that an employee who resigns employment is not entitled to a separation allowance.

---

[3] Plaintiff worked less than a year between the date he was rehired and the date of his latest termination. According to the Plan, he was entitled to four weeks of severance pay.

**Standard of Review**

Summary judgment is appropriate if the pleadings and summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Prop., Inc. v. Potomac Ins. Co. of Ill.,* 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex,* 477 U.S. at 322-25).

The moving party may meet its initial burden "by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325. If the movant fails to meet its initial burden, the motion must be denied, irrespective of the non-movant's response. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant meets its burden, the non-movant must go beyond the pleadings and designate specific facts showing that a genuine issue of material fact exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Edwards v. Your Credit, Inc.,* 148 F.3d 427, 431 (5th Cir. 1998). A party opposing summary judgment may not rest on mere conclusory allegations or denials in its pleadings that are unsupported by specific facts presented in affidavits opposing the motion for summary judgment. *See* FED. R. CIV. P. 56(e); *Lujan,* 497 U.S. at 888; *Hightower v. Texas Hosp. Ass'n,* 65 F.3d 443, 447 (5th Cir. 1995).

## Analysis

## Exhaustion of Administrative Remedies

Defendant contends that Plaintiff's claim should be dismissed because Plaintiff failed to pursue, much less exhaust, his mandatory administrative remedies. *See Medina v. Anthem Life Ins. Co.*, 983 F.2d 29, 33 (5th Cir. 1993) (providing that a plaintiff must exhaust administrative remedies before bringing an ERISA claim); *Simmons v. Willcox*, 911 F.2d 1077, 1081 (5th Cir. 1990) (holding that plaintiff had no cause of action for the denial of ERISA benefits until she exhausted her administrative remedies). A claim for relief under 29 U.S.C. § 1132(a)(1)(B) of ERISA does not accrue until a formal and final denial of benefits, as set out in the Plan's claim procedures, has been made. *Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir. 1992); *Simmons*, 911 F.2d at 1081.

Plaintiff argues that the Plan states that an employee *may* file a claim for Plan Benefits and initiate a Company review and that the Plan also states that an employee *may* file suit for benefits. He contends that the Plan does not require him to exhaust the administrative procedure as a prerequisite to filing suit. Additionally, Plaintiff contends that exhaustion would have been futile because he thought the Company was considering his request for additional separation benefits.

Generally, a claimant's failure to exhaust the administrative remedies provided for in an ERISA plan forecloses judicial review of the claim denial. *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1016 (5th Cir. 1993)(citing *Denton v. First Nat'l Bank,* 765 F.2d 1295, 1300-03 (5th Cir.1985)). A dismissal without prejudice for Plaintiff to exhaust his administrative remedies would be futile because the deadline for the claimant to use the administrative procedure has long since passed. *See Denton*, 765 F.2d at 1303. Additionally, both parties have addressed the merits of Plaintiff's ERISA claim, and the Court has before it sufficient evidence to decide the case. *See Offut*

9

*v. Prudential Ins. Co.*, 735 F.2d 984, 950 (5th Cir. 1984) (holding that a reviewing court will not remand a case to the plan administrator for further assessment "when it would be a useless formality"). Accordingly, the Court will consider the merits of the summary judgment motions.

### Eligibility Under the Plan

To be entitled to a separation allowance under the Plan, Plaintiff must have been a "regular, non-temporary, non-union employee of a Participating Employer," whose employment Progressive terminated as a result of a Reduction in Force or a Reorganization; further, he must have signed a Separation Agreement and General Release and delivered them to the Company within 90 days after his Termination Date. Plaintiff refused to sign the Separation Agreement that Defendant offered him because he disagreed with the amount of the separation benefits. He also refused to sign the Release.

The Plan also provides that "an Eligible Employee shall not be entitled to receive a separation allowance if Progressive offers [him] a Comparable Job, or [he] accepts any job (whether or not it is a Comparable Job) with an Affiliated Company prior to payment of a separation allowance." Plaintiff admits that although he did not want the new position that Defendant offered him, he accepted it and worked in the new position from July 20, 2003, until he voluntarily resigned on August 21, 2003. The Plan provides in no uncertain terms that:

> In no event shall an Eligible Employee be entitled to receive a separation allowance if his/her employment terminates as a result of his/her death, resignation, leave of absence, Discharge for Cause or any reason other than as a result of a Reduction in Force or a Reorganization, or if he/she fails to deliver a signed Separation Agreement and General Release to the company within the time specified above.

Plaintiff's voluntary resignation made him ineligible for a separation allowance.

Plaintiff contends that he accepted the new position because he believed that Defendant was

10

still considering his claim that he was entitled to separation benefits based upon eight years of service rather than upon less than one year of service. Yet, Plaintiff offers no proof that the claim was still under consideration or that he triggered the administrative procedure. By failing to file a claim, accepting the new position, and voluntarily resigning, Plaintiff failed to preserve any eligibility he may have had for Separation Benefits under the Plan. His claim that his eligibility survived his new job and voluntary resignation is unfounded. Plaintiff is not eligible for separation benefits under the Plan.

Alternatively, the Court will consider whether the Company abused its discretion during Plaintiff's initial eligibility period by offering Plaintiff a separation allowance based upon his most recent hire date, September 28, 2002, rather than upon his "adjusted service date" of December 15, 1995. *See Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115 (1989)(requiring abuse of discretion review where a plan gives the administrator authority to construe the terms of the plan).

"**Years of Service**"

A reviewing court must determine first the legally correct interpretation of the ERISA plan's provisions. *Batchelor v. Int'l Broth. of Elec. Workers Local 861 Pension and Ret. Fund*, 877 F.2d 441, 444 (5th Cir. 1989). If the reviewing court determines that the administrators' interpretation is not legally correct, then, the court must determine whether the administrators' decision constitutes an abuse of discretion. *Id.* In deciding whether a plan's interpretation is legally correct, the court considers three factors: (1) whether the administrators have given the pension plan a uniform construction; (2) whether the administrators' interpretation is consistent with a fair reading of the plan; and (3) whether different interpretations of the plan will result in unanticipated costs. *Chevron Chem. Co. v. Oil, Chem. & Atomic Workers Local Union 4-447,* 47 F.3d 139, 145 (5th Cir. 1995).

Plaintiff has not provided any evidence that the Plan calculated his separation allowance differently from comparable rehired employees who were also terminated pursuant to a reorganization. No evidence indicates that the Company inconsistently applied the Plan's separation allowance provisions. The Court has no basis to make a finding concerning the uniformity of construction given the plan. Similarly the record contains no evidence which would permit the Court to decide whether either of the interpretations would result in substantial unanticipated costs to the Plan.

The Court must determine whether the Company's interpretation is consistent with a fair reading of the Plan. A court must interpret an ERISA plan's provisions as they are likely to be "understood by the average plan participant," consistent with ERISA's statutory drafting requirements. *Walker v. Wal-Mart Stores, Inc.*, 159 F.3d 938, 940-41 (5th Cir. 1998). Accordingly to the plain and unambiguous terms of the Plan, "Years of Service" is explicitly and clearly defined as "*the period of time beginning on his/her most recent date of hire by a Participating Employer and ending on his/her most recent Termination Date* [emphasis supplied]. Plaintiff argues that the Handbook Policy's provision for an "adjusted service date" for certain specifically enumerated benefits (which, notably, does not include separation benefits) or his notes about "seniority" or "tenure" in the document he prepared are synonymous with his "most recent date of hire" for purposes of the Plan's separation allowance. This argument is frivolous, at best.

The Handbook specifically notifies Plaintiff that "the Company shall make all benefit claim determinations in accordance with governing Plan documents." Plaintiff's self-created document, on which Earnest's signature acknowledged that the job description and duties were agreed upon, did not alter the terms of the Plan. It is undisputed that Defendant's Chief Human Resources Officer

12

did not approve in writing any agreement between Plaintiff and Defendant that supersedes the Plan with respect to a separation allowance. Accordingly, no effective or enforceable agreement supercedes the Plan and nothing in the Plan shall be construed as ratifying or validating any such agreement that has not been so approved.

The Court holds that the Plan's language is unambiguous and that the Company's giving the term "most recent date of hire" its commonly understood meaning is legally correct. The Court need not proceed to the second step of the analysis because the Court has found that the Company's application of the Plan is legally correct. *Pickrom v. Belger Cartage Serv., Inc.,* 57 F.3d 468, 472-73 (5th Cir. 1995). The Company did not abuse its discretion in determining that Plaintiff's most recent date of hire was September 28, 2002. The Company correctly decided that Plaintiff would have been entitled to a separation allowance of $4,471, if he had not accepted a new job with Defendant and then voluntarily resigned.

### **Attorney Fees**

Defendant seeks its attorney fees for defending this action, contending that Plaintiff's suit is frivolous. Under ERISA, "the court in its discretion" may allow reasonable attorney fees and costs to either party. 29 U.S.C.A. § 1132(g)(1). A court should consider the following five factors in deciding whether to award attorney fees in an ERISA action: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorney fees; (3) whether an award of attorney fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the party requesting attorney fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Wegner v. Standard Ins.*

*Co.*, 129 F.3d 814, 821 (5th Cir. 1997) (citing *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir. 1980)). No single factor is necessarily decisive, and some factors may not be appropriate in a given case. *Id.*

Plaintiff admits that when he initially voluntarily resigned his employment with Defendant in 1994, he did not expect nor receive a separation allowance. He admits that when he returned to work in 2002, he never discussed the topic of a separation allowance with anyone. He admits that no one made any representations or promises at any time with respect to a separation allowance or how entitlement to a separation allowance would be determined. He admits that he continued to work for Defendant, voluntarily resigned, and then brought this action for a separation allowance that would include the period up to his initial resignation, less one year.

The Court first considers Plaintiff's assertion that the Plan provides that returning employees are entitled to have an adjusted service date that goes back to their original point of hire, not their most recent date of hire. Plaintiff is either unable or unwilling to distinguish between the Plan and the Handbook Policy, or else he misrepresents the plain and unambiguous language of the Plan. The Plan makes no mention of "tenure," "seniority," or an "adjusted service date." In fact, the plain meaning of "most recent date of hire" is self-evident. Accordingly, the first factor weighs heavily in favor of granting Defendant attorney fees.

The Court now considers the other factors. The record contains no evidence with respect to Plaintiff's ability to pay an award of attorney fees or any indication that Plaintiff sought to benefit anyone other than himself. An award of attorney fees may deter other frivolous filers. Finally, the relative merits of the parties' positions weigh heavily in favor of Defendant. The Court finds that under these circumstances, Defendant is entitled to attorney fees and costs for defending this action.

**Conclusion**

In sum, the Court concludes that the Company's interpretation of the Plan is legally correct and that Plaintiff should take nothing by way of his cause of action. Plaintiff's Motion for Partial Summary Judgment is DENIED. Defendant's Cross Motion for Summary Judgment is GRANTED. The Court awards Defendant its reasonable attorney fees for defending this action and costs. Defendant shall file a properly supported motion for attorney fees within fourteen days of the date of the Judgment. Plaintiff shall have ten days thereafter to contest the reasonableness of the attorney fees.

Signed, January 25, 2006.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE